**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KIMBERLY CARPENTER, individually, and as personal representative of the ESTATE OF EMMELINE CARPENTER, a deceased individual, and MARNIE BROWN, individually, and as personal representative of the ESTATE OF KAEDAN SNIADACH, a deceased individual,<br><br>Plaintiffs,<br><br>vs.<br><br>CONSOLIDATED CHEMICAL & SOLVENTS, LLC, a Pennsylvania corporation, the ESTATE OF DAVID WALTER SURMAN, JR., a deceased individual, and DAVID SURMAN CCS LLC,<br><br>Defendants. | Case No.: 5:25-cv-03601-JLS<br><br><br>**FIRST AMENDED COMPLAINT** |

COME NOW Plaintiffs Kimberly Carpenter, individually, and as the personal representative of the Estate of Emmeline Carpenter, a deceased minor, and Marnie Brown, individually, and as the personal representative of the Estate of Kaedan Sniadach, a deceased individual, by and through their attorneys, Levin & Zeiger, LLP and C.A. Goldberg, PLLC, and for causes of action against Defendants Consolidated Chemical & Solvents, LLC ("Consolidated Chemical"), the Estate of David Walter Surman, Jr., a deceased individual, and David Surman CCS LLC state:

**PRELIMINARY STATEMENT**

1. This is a case about a Pennsylvania company's choice to profit from selling and home delivering a known suicide chemical to a 14-year-old and a 20-year-old.

2. High purity (99+%) Sodium Nitrite is a chemical with no household use besides suicide.

3. When trace amounts are mixed with water and ingested, it kills a person within twenty minutes.

4. In our country, but with particular emphasis in Pennsylvania's criminal code, it is illegal to aid or assist in somebody else's suicide. Consolidated Chemical not only aided in a suicide, but profited off suicidal young people, by supplying Sodium Nitrite to anyone and everyone.

5. By or before December 15, 2022, Consolidated Chemical knew or should have known that Sodium Nitrite had become highly popularized as an easy to use, fast-acting suicide method when it made the decision to *continue* selling and delivering the chemical to residential addresses.

6. When Consolidated Chemical sold the units of Sodium Nitrite in this case to Plaintiffs' decedents, all major U.S. e-commerce platforms and privately owned chemical manufacturers had already stopped sales of Sodium Nitrite as a result of the chemical's known and highly publicized use for suicide.

7. Consolidated Chemical continued to sell Sodium Nitrite in various quantities through its website Consolidated-Chemical.com.

8. Consolidated Chemical deploys no method of verifying its purchasers' age.

9. Consolidated Chemical knows it sells and delivers Sodium Nitrite to households that have no history of purchasing potent industrial chemicals and without requiring any proof of a business identity or legitimate purpose for such purchases.

10. By December of 2022, all chemical manufacturers in the United States were on notice that Sodium Nitrite was a suicide chemical. For almost a year, there had been national mainstream news media about the method being touted on pro-suicide internet forums and extensive coverage of families suing online retailers for selling and delivering the highly lethal chemical to children.

11. After the world was unequivocally on notice of the high incidence of Sodium Nitrite causing death, Consolidated Chemical consciously continued to sell and deliver Sodium Nitrite to household addresses across America, including the residence of Emmeline Carpenter and Kaedan Sniadach.

12. Plaintiff Kimberly Carpenter is the mother of 14-year-old Emmeline, a triplet.

13. On December 15, 2022, Consolidated Chemical sold Sodium Nitrite to Emmeline, a minor who was sold the deadly chemical without needing to provide her age, identification, or intended use. Consolidated Chemical facilitated delivery of the chemical to Emmeline.

14. On the night of March 21, 2023, after ingesting Sodium Nitrite, Emmeline slowly walked over to her mother sitting in the living room and said, "Mama," before she collapsed to the floor. She then quietly whispered, "call the hospital." Paramedics arrived quickly. They made 16 attempts to resuscitate Emmeline, but, due to the lethality of Sodium Nitrite, they were unsuccessful. On March 22, 2023, Emmeline died an eighth grader, leaving behind her triplet brothers, Daniel and Matthew. Emmeline's cause of death was Acute Sodium Nitrite

Intoxication.

15. Plaintiff Marnie Brown is the mother of 20-year-old Kaedan Sniadach.

16. On June 4, 2023, Kaedan ingested Sodium Nitrite while at home with his father. Marnie and her daughter (Kaedan's sister) went to church that Sunday and afterwards, she received a call from Kaedan's father, Scott, screaming and crying saying that Kaedan died. Scott told Marnie that the paramedics were there and trying to save Kaedan. When Marnie and her daughter met Scott at the hospital, they told her that Kaedan did not make it. Kaedan died a 20-year-old, leaving behind his mother, father, and 9-year-old sister. Later the family would learn Kaedan died because Consolidated Chemical sold and delivered Sodium Nitrite to Kaedan.

17. Consolidated Chemical acted consciously and without regard to the safety of these two young individuals – one being a child. Consolidated Chemical sold Emmeline and Kaedan Sodium Nitrite with the knowledge and understanding it would be used to end their lives.

18. In loving memory of Emmeline and Kaedan, their mothers now seek to hold Consolidated Chemical responsible under theories of negligence and negligent infliction of emotional distress for the untimely, painful, and preventable death it caused. Plaintiffs Kimberly Carpenter and Marnie Brown further seek an injunction against Consolidated Chemical to forever ban sales of Sodium Nitrite to individuals.

**PARTIES**

At all relevant and material times:

19. Plaintiff Kimberly Carpenter ("Kimberly") is the mother of Emmeline, who died on March 22, 2023, at age 14.

20. Kimberly resides in Sparks, Nevada.

21. The Circuit Court of the Eighteenth Judicial Court for Brevard County, Florida appointed Kimberly as Personal Representative for the Estate of Emmeline Elizabeth Carpenter on January 14, 2026. *See Estate of Emmeline Elizabeth Carpenter, File No.* 05-2025-CP-064439-XXCP-BC. Kimberly maintains this action in a representative capacity for the Estate's benefit as well as individually.

22. Kimberly has not entered into any Agreements or other contractual relationship with CONSOLIDATED CHEMICAL in connection with CONSOLIDATED CHEMICAL's transaction(s) with Emmeline.

23. Upon information and belief, Emmeline never entered into a User Agreement or other contractual relationship with CONSOLIDATED CHEMICAL, but as personal representative to the Estate of Emmeline Carpenter, Kimberly expressly disaffirms any and all contractual agreements with CONSOLIDATED CHEMICAL which would be unenforceable anyway because of Emmeline's age.

24. Plaintiff Marnie Brown ("Marnie") is the mother of Kaedan, who died on June 5, 2023, at age 20.

25. Marnie resides in Wilbur by the Sea, Florida.

26. The Circuit Court of the Seventh Judicial Court for Volusia County, Florida appointed Marnie as Personal Representative for the Estate of Kaedan Matthew Sniadach on January 27, 2026. *See Estate of Kaedan Matthew Sniadach, File No.* 2026-10117-PRDL. Marnie maintains this action in a representative capacity for the Estate's benefit as well as individually.

27. Marnie has not entered into any Agreements or other contractual relationship with CONSOLIDATED CHEMICAL in connection with CONSOLIDATED CHEMICAL's

FIRST AMENDED COMPLAINT

transaction(s) with Kaedan.

28. Upon information and belief, Kaedan never entered into a User Agreement or other contractual relationship with CONSOLIDATED CHEMICAL, but as personal representative to the Estate of Kaedan Sniadach, Marnie expressly disaffirms any and all contractual agreements with CONSOLIDATED CHEMICAL.

29. Defendant CONSOLIDATED CHEMICAL is a corporation organized under the laws of the State of Pennsylvania with a principal place of business in Quakertown, Pennsylvania.

30. Defendant David W. Surman, Jr., at all relevant times, was the owner, President, and a principal decision-maker of Defendant CONSOLIDATED CHEMICAL and exercised control over the acts and omissions alleged herein. Upon information and belief, David W. Surman, Jr. resided in Quakertown, Pennsylvania. The Estate of David W. Surman, Jr. is sued in its representative capacity and is liable for the conduct of CONSOLIDATED CHEMICAL as alleged in this Complaint.

31. Upon information and belief, Defendant David Surman CCS LLC, is a corporation organized under the laws of the State of Pennsylvania with a principal place of business in Quakertown, Pennsylvania.

## JURISDICTION

32. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

33. Defendant CONSOLIDATED CHEMICAL is a corporation organized under the laws of the State of Pennsylvania with its headquarters and principal place of business in Quakertown, Pennsylvania in Bucks County.

34. This Court has jurisdiction over the parties because CONSOLIDATED CHEMICAL is incorporated in Pennsylvania and these causes of action arise out of CONSOLIDATED CHEMICAL's business activities within Pennsylvania, namely, the sale of Sodium Nitrite.

35. Defendant Estate of David W. Surman, Jr. is deemed a citizen of Pennsylvania, as the decedent was domiciled in Pennsylvania at the time of his death and, upon information and belief, the Estate is being administered in Pennsylvania.

36. Defendant David Surman CCS LLC is a corporation organized under the laws of the State of Pennsylvania with its principal place of business in Quakertown, Pennsylvania in Bucks County.

37. This Court has personal jurisdiction over Defendants because Defendants are domiciled in, incorporated in, maintain their principal place of business in, and/or otherwise conduct substantial and continuous business in the Commonwealth of Pennsylvania, including within this District.

38. Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendants reside in this District and a substantial part of the events or omissions giving rise to the claims occurred within this District.

39. CONSOLIDATED CHEMICAL shipped its Sodium Nitrite from Pennsylvania to Emmeline and Kaedan.

40. CONSOLIDATED CHEMICAL and Plaintiff Kimberly Carpenter, individually, and as Personal Representative of the Estate of Emmeline Carpenter entered into an agreement tolling the statute of limitations on her daughter's wrongful death claims to June 23, 2025.

41. Plaintiff Marnie Brown, individually, and as Personal Representative of the Estate of Kaedan Sniadach, discovered Kaedan's cause of death being Ingestion of Sodium Nitrite on June 21, 2023, making her son's wrongful death claims valid through June 21, 2025.

## FACTS

### Consolidated Chemical

42. Consolidated Chemical operates as an online marketplace that sells chemicals and facilitates delivery to purchasers.

43. Consolidated Chemical has sold its Sodium Nitrite on its own website, Amazon, and Walmart.

44. Consolidated Chemical offers supplies for industries, educational facilities, and research laboratories across America.

45. Consolidated Chemical has a history of unlawful and dangerous conduct. On June 28, 2018, David W. Surman Jr. ("Surman"), the owner of Consolidated Chemical, was arrested and charged with possession or manufacture of a weapon of mass destruction, possession of suspected methamphetamine, possession of drug paraphernalia, reckless endangerment and four counts each of possession of instruments of crime and possession of a prohibited offensive weapon.[1] Following Surman's arrest, authorities detonated bombs – one being 18 inches in length

---

[1] https://www.lehighvalleylive.com/news/2018/07/hearing_delayed_for_alleged_bu.html

with multiple fuses – on the road outside of Consolidated Chemical, Spinnerstown Road.[2]

46. Bail conditions prohibited Surman from accessing his business, Consolidated Chemical.

47. Despite Surman's violent history with his company's offerings, Consolidated Chemical continued to operate for years to come.

48. Consolidated Chemical's Sodium Nitrite is sold at 99+% purity – a purity level for which there is no non-institutional or household use.

49. Consolidated Chemical claims to not allow individuals under the age of 21 to purchase hazardous materials from their site.

50. However, Consolidated Chemical does not request a purchaser to state their age when they're completing an online order and ships their products directly to households, with quick shipping and no signature required.

51. The National Association of Chemical Distributors, reports that none of its 400 members and affiliates distribute Sodium Nitrite directly to consumers.

## Suicide by Sodium Nitrite

52. Sodium Nitrite is a water soluble, white to slightly yellowish crystalline powder.

53. The Sodium Nitrite sold by Consolidated Chemical has no household application. Its uses are limited to medical and research facilities as it is the antidote to cyanide poisoning. In Australia, it was also introduced as a method to control the growth of feral pig populations.

---

[2] https://6abc.com/pennsylvania-milford-township-upper-bucks-explosions-explosion/4265273/

54.     When Sodium Nitrite is used for suicide, it is mixed in a glass with water and consumed orally. One gulp is enough to make it highly unlikely to survive. Methemoglobinemia results, impairing oxygen transport in blood, which causes hypoxia.

55.     Death from Sodium Nitrite induced Methemoglobinemia causes excruciating discomfort prior to death.  It operates as a chemical asphyxiant, depriving oxygen to the brain and heart.  Individuals often experience volatile vomiting, seizures, diarrhea, suffocation, and intense stomach pain.

56.     The appearance of individuals who died or are dying of Sodium Nitrite toxicity is itself traumatizing.  The lips and nails are blackened, and the skin is mottled and splotchy, and turns bluish gray.  The limbs become rigid. The blood, which turns thick and brown and with the viscosity of chocolate syrup, oozes from the mouth and nose.

57.     At a very diluted level, Sodium Nitrite can be found in food preservatives. For instance, curing salts used for making jerky contain about 6% Sodium Nitrite.  Even at this much lower concentration, curing salts are always dyed pink as a caution to avoid mistaking it for regular salt, because over-consumption – even of curing salts – is dangerous. In contrast, the Consolidated Chemical Sodium Nitrite contains 99+% pure Sodium Nitrite.

58.     Sodium Nitrite at a purity level greater than 95% is a reagent chemical, meaning its uses are strictly monitored in food factories and medical manufacturing, as well as in high-purity laboratories and analytical applications.  A trace amount could make a person extremely ill.

FIRST AMENDED COMPLAINT

59. Sodium Nitrite at a purity level of 99+% purity actually exceeds the American Chemistry Society ("ACS") standard of 97% purity. This is the highest purity chemical grade that exists in American science and research.

60. The FDA Administration has a special category of regulation for Sodium Nitrite (21 CFR 172.175) when it's used in low concentration as a food additive. All retail packing requires labeling with "adequate instructions for use to provide a final food product" and which complies with strict federal limits on the amount of the dangerous compound used. Federal law requires a labeled safety warning for kids. "[T]he label of the additive, or of a mixture containing the additive, shall bear the statement 'Keep out of the reach of children.'"

61. Sodium Nitrite is a highly recommended suicide method on the pro-suicide website Sanctioned Suicide.

62. Sanctioned Suicide specifically recommends Sodium Nitrite as an effective method of completing a suicide that is cheap and easy and most importantly, difficult for family members and professionals to stop.

63. The site further provides threads of instructions specifying dosages and methods of dissolving the substance in water prior to consumption. It recommends supplementing the Sodium Nitrite with antacid medication like Tagamet to ensure the poison can be digested without vomiting.

64. After other retailers had stopped selling Sodium Nitrite because of its use for suicide, Consolidated Chemicals was known as the go-to place that continued selling the deadly chemical. For instance, user "ChaiTea" reported "ccs is where I got mine, no business requirement." User L1v1ng2Di3 said "what is the initials of the chemical supply?" And Anna

1234888 replied "CC&S."   Adding to the thread, user "corpsive" stated "Welp, what was arguably the best option for buying Sodium Nitrite is now gone. It was 25 bucks, no tax or shipping even, no questions asked, no ID needed nothin'. Thankfully I bought some months ago, but just thought I'd point it out for others who were eyeing it."



FIRST AMENDED COMPLAINT



**corpsive**

Not yet dead. Still, we rot.

Jan 10, 2023

17

Oct 5, 2023

#1

Welp, what was arguably the best option for buying Sodium Nitrite is now gone. It was 25 bucks, no tax or shipping even, no questions asked, no ID needed, nothin'. Thankfully I bought some months ago, but just thought I'd point it out for others who were eyeing it.

Just some guy.

Deleted member 65988

Report      Like   + Quote   Reply

## <u>Notice of Sodium Nitrite as a Suicide Chemical and Consolidated Chemical's Continued Sales</u>

65. While selling and delivering an industrial chemical with no household use to the home of a 14-year-old and a 20-year-old is, on its own, an unreasonably unsafe business practice, it becomes unconscionable with the added information that the chemical's primary use is for suicide.

66. By December of 2022, two lawsuits had already been filed for the wrongful deaths of four young people—three of them being children.

- *Scott v. Amazon.com, Inc.,* No. 22-2-01739-2 SEA (K.C. Sup. Ct. 2022)

- *McCarthy, et al. v. Amazon.com, Inc.,* C-23-0263-JLR (W.D. Wash. 2022)

67. By December 2022, dozens of high profile publications had written on the topic, including but not limited to the following:

> a. NPR, *Parents say Amazon assisted in the suicide of teens by selling them a lethal substance* (Oct. 9, 2022), https://www.npr.org/2022/10/09/1127686507/amazon-suicide-teenagers-poison.
> b. KRON4, *Parents file lawsuits against Amazon for selling suicide kits* (Oct. 12, 2022), https://www.kron4.com/news/bay-area/parents-file-lawsuits-against-amazon-for-selling-suicide-kits/.

FIRST AMENDED COMPLAINT

c.  Neuroscience News, *Sodium nitrite and suicide* (Feb. 15, 2022), https://neurosciencenews.com/sodium-nitrate-suicide-21065/.
d.  The Daily Beast, *"Empire" actress Lindsey Pearlman's sodium nitrite suicide is part of a disturbing trend* (Feb. 22, 2022), https://www.thedailybeast.com/empire-actress-lindsey-pearlman-sodium-nitrite-suicide-is-part-of-a-disturbing-trend/.
e. The New York Times, *Teenagers are dying after buying a lethal drug on social media* (Feb. 4, 2022), https://www.nytimes.com/2022/02/04/technology/amazon-suicide-poison-preservative.html.
f.  People, *Matthew Mindler's cause of death revealed as sodium nitrate toxicity* (Oct. 11, 2021), https://people.com/movies/matthew-mindlers-cause-of-death-revealed-as-sodium-nitrate-toxicity/.
g.  Daily Mail, *Amazon is sued for selling "suicide kits" to teenagers* (Oct. 11, 2022), https://www.dailymail.co.uk/news/article-11300919/Amazon-sued-selling-suicide-kits-teenagers.html.
h.  New York Post, *Parents accuse Amazon of selling suicide kits to teens* (Oct. 11, 2022), https://nypost.com/2022/10/11/parents-accuse-amazon-of-selling-suicide-kits-to-teens/.

68.     By December 2022, Congress had launched an investigation into the sale of Sodium Nitrite for suicide. *See, e.g.,* U.S. House of Representatives, Office of Rep. Lori Trahan, *Reps. Trahan, Krishnamoorthi Demand Amazon Stop Selling Suicide Kits* (Oct. 17, 2022), https://trahan.house.gov/news/documentsingle.aspx?DocumentID=2740.

69.     Consolidated Chemical's decision to continue selling the suicide chemical in the face of this public information, and other sellers' cessation of Sodium Nitrite sales, fostered a sense of support and camaraderie between Consolidated Chemical and individuals experiencing suicidal ideation.  On November 21, 2022, "Wizard" posted online that Consolidated Chemical is "one of the last companies that will sell to individuals in the US aside from the beloved, but expensive IC."  Notably, IC is short for ImTime Cuisine, a website controlled by a Canadian man, Kenneth Law, who was arrested in May 2023 for selling Sodium Nitrite online and faces

28 felonies including 14 counts of first-degree murder and 14 counts of counseling and aiding suicide.



almaranthine
Wizard

Nov 29, 2019

616

Nov 21, 2022 #15

hey just in case, you may want to abbreviate the source (CCS) just to keep it on the dl. I know it seems silly all things considered, because users have been abbreviating all the sources that were previously available that are now restricted, but it's best to stay on the safe side. I've been very curious about this particular company because the purity percentage isn't listed and the company owner back in 2018 was arrested for having explosives and meth in his home and business. Idk if the same guy still runs it. If it is, perhaps they aren't afraid of the "bad" press that comes along with selling SN. Let us know if you end up getting it from them. As far as I know, it's one of the last companies that will sell to individuals in the US aside from the beloved, but expensive IC.

inevitable

eternapeace and ISeeDarkness

Report                    Like    + Quote    Reply

### The Availability of Sodium Nitrite on Consolidated Chemical Increase Suicides

70.    The Centers for Disease Control and Prevention say that since 2009, suicide has increased by 45% among 15–24-year-olds and over 30% among 25-34-year-olds.

71.    Experts say that for most people, suicidal thoughts will eventually pass. Treatment, support from loved ones, and detailed safety plans can help.

72.    Clinicians and researchers have found that the likelihood of a suicide attempt increases as people learn about methods, become convinced it is the right thing to do, and have the means.

73.    Consolidated Chemical provides the method and means for suicide. With Consolidated Chemical's non-existent method for age, business, or use verification, and fast delivery to residences, individuals can obtain Sodium Nitrite within a few days of learning about

it and within a period of time short enough for the bout of suicidal ideation originating at the point of purchase to persist.

74. Unlike other easy, accessible methods of suicide, with Sodium Nitrite there is no going back. The chemical leaves no room for people to change their mind mid-attempt, self-interruptions being a common life-saving behavior.

75. The lethality of ingesting Sodium Nitrite is not well understood by the public.

76. Suicide attempts via Sodium Nitrite are lethal 83% of the time. The lethality of this method is second only to attempts via firearm which are 90% lethal.

77. Other oral self-poisoning methods of suicide attempts, in contrast, are 1-2% lethal. Unlike other methods of self-poisoning, there are virtually no medical interventions that reverse the poisoning in the typical case where somebody changes their mind during or after the attempt. Vomiting, mouth-to-mouth resuscitation, Narcan, and stomach pumping, do not work. One obscure antidote is not readily accessible to first responders in time.

**Consolidated Chemical Sells Sodium Nitrite to Emmeline, Causing Her Death**

78. In December 2022, Emmeline, age 14, lived with her mother and her triplet brothers, Daniel and Matthew, in Titusville, Florida.

79. Emmeline was a beautiful and gifted artist. She was a first chair violinist at her middle school. For Christmas that year, she wrote a letter to her aunt, Cindy, asking for a CD or vinyl record of Pyotr Ilyich Tchaikovsky because she loved classical music.

80. Emmeline experienced periodic yet fleeting episodes of anxiety and depression. This was an issue that Emmeline was able to manage with the support of her family and therapy.

81.     Emmeline quickly and easily ordered Sodium Nitrite off Consolidated-Chemical.com without needing to provide her age, identification, or intended use. On December 15, 2022, Consolidated Chemical shipped the suicide chemical to Emmeline's home with no signature required.

82.     Around 11:53 PM on the night of March 21, 2023, Emmeline ingested the Sodium Nitrite. Kimberly, asleep in the living room, was awoken by extremely violent coughing and gagging she heard coming from the bathroom. Emmeline came out of the bathroom and slowly walked towards her mother sitting in the living room. Emmeline held herself up on the back of Kimberly's chair and said, "Mama," before she collapsed to the floor. Kimberly saw fear in her daughter's eyes. Emmeline then quietly whispered "call the hospital." This was the last time Kimberly heard her daughter's voice or looked into her daughter's eyes.

83.     The paramedics arrived quickly but found Emmeline already unconscious with abnormal coloring taking over her skin. The paramedics rushed Emmeline to the Emergency Room. They made 16 attempts to resuscitate Emmeline, the first was just moments after they drove away from her home. Emmeline lost her pulse 12 times on the way to the hospital.

84.     Emmeline was pronounced dead at 1:57 A.M. on March 22, 2023.

85.     Kimberly asked to see Emmeline so she could say goodbye. However, medical personnel denied her request, stating that she should not see Emmeline in her "current state," since they had to attempt many means to bring her back to life.

86.     Kimberly remains tormented by the fact that she never had the chance to say goodbye to her daughter. The last words Kimberly ever heard her daughter say

87. At Emmeline's funeral, the high school orchestra performed a tribute in her memory.

**Consolidated Chemical Sells Sodium Nitrite to Kaedan, Causing His Death**

88. In June 2023, Kaedan, age 20, lived primarily with his father and part time with his mother and sister, Kendall, in Wilbur by the Sea, Florida.

89. Kaedan loved to travel and loved his family. One year before his death, Kaedan spent the summer in Europe and Norway and a few months later visited his grandparents in New Jersey and his aunt in Connecticut. Kaedan began extensively researching Ireland to take a trip there with his mother and sister just two days before his death.

90. Kaedan was very close with his younger sister, Kendall, and would often pick her up from school. He had also been working for his aunt who is a physician assistant and owner of multiple urgent care centers. Kaedan handled the front office, patient intake, billing, and insurance at the urgent care centers. Just before his death, Kaedan ordered new uniforms to wear to work.

91. Prior to his death, Kaedan quickly and easily ordered Sodium Nitrite off Consolidated-Chemicals.com without needing to provide his age, identification, or intended use. Consolidated Chemical shipped the suicide chemical to Kaedan's home with no signature required.

92. On Sunday, June 5, 2023, Kaedan ingested Sodium Nitrite while at home with his father, Scott. Scott found Kaedan and tried to perform CPR. While doing compressions on his son, blood poured out of Kaedan's mouth and nose.

93. Once the paramedics arrived, Scott called Marnie, Kaedan's mother. Scott screamed and cried into the phone, telling Marnie "Kaedan's killed himself."

94. Marnie rushed to the hospital that the paramedics took Kaedan and Scott to. But when Marnie arrived, Kaedan was dead.

95. Kaedan's time of death was 1:01 A.M. on June 5, 2023.

96. Detectives found a bottle of Sodium Nitrite and a needleless syringe while investigating Kaedan's death at Scott's home.

97. Kaedan is survived by his mother, father, and younger sister.

**Consolidated Chemical Caused Plaintiffs' Harms**

98. Consolidated Chemical is liable for marketing, selling, and delivering a suicide chemical.

99. Consolidated Chemical negligently did not so much as inquire – let alone verify – the age of its consumers. It sold a suicide chemical cheaply and offered fast residential home delivery.

100. Consolidated Chemical promoted and aided the suicide of Emmeline and Kaedan.

101. Pennsylvania public policy is clear and demonstrates that there is liability—even felony criminal liability via 18 Pa. C.S.A. § 2505(b)—for deliberately aiding another to commit suicide. The legislature calls for a sentence enhancement when at the time of the offense the person who died by suicide or was aided or solicited to die by suicide is under 18 years of age– signaling the gravity with which they take this issue.

102. The only exception to the prohibition on assisting in another person's suicide is certain states that allow terminally ill adults to receive a drug to hasten their death under very regulated medical circumstances. That exception did not apply.

103. Consolidated Chemical knew or should have known that they were facilitating and profiting from vulnerable people dying by suicide.

104. Consolidated Chemical had options available to mitigate the risk of selling dangerous and deadly Sodium Nitrite, but it chose not to exercise those options.

105. Consolidated Chemical was best positioned to assess health risks to consumers, manage labeling, and take care to be responsible with warnings.

106. Consolidated Chemical operates beneath the standard of care for online retailers when it comes to selling Sodium Nitrite products. While they have made an affirmative decision to continue selling Sodium Nitrite, other sites banned the chemical years ago. Both Etsy and eBay stopped selling Sodium Nitrite when they learned it was frequently being used for suicide.

107. In 2019, eBay made the voluntary decision to globally prohibit the sale of Sodium Nitrite after learning it could be used for suicide. In a letter to a coroner in the UK who notified eBay of a tragic case of death by Sodium Nitrite, eBay said that in addition to adding Sodium Nitrite to its prohibited items policy in 2019, it had "update[d] its filters, which are used to detect and prevent the listing for sale of this chemical." Upon learning that there had been an undetected sale of one unit of Sodium Nitrite in 2020 by an individual who listed it, eBay said it again updated its filters and dispatched its security team to do a sweep for any similar listings.

108. In September 2020, Amazon.com delisted the first of several vendors of Sodium Nitrite on its platform.

109. In 2019 and 2020, other chemical manufacturers in the United States, such as ManOfOhm and Loudwolf, began to voluntarily stop selling Sodium Nitrite to the general public after learning about the product being glorified on pro-suicide online forums or learning – to their horror – that their own product had been used for suicide.

110. In contrast, Consolidated Chemical made the informed decision to continue to sell the chemical without restriction.

111. Another company, ImTime Cuisine, sold Sodium Nitrite for almost as long as Consolidated Chemicals did. The Canadian man behind that company began restricting the chemical long before Consolidated Chemicals did, but nevertheless he was arrested in May 2023 for conduct no different than what Consolidated Chemicals engaged in. He was later charged with 14 counts of first degree murder and an additional 14 counts of counseling or aiding suicide.

112. Consolidated Chemical also failed to take one of any number of simple ameliorative actions, such as: cease selling Sodium Nitrite; include adequate warnings; display accurate warning labels on the website and the bottle; describe Sodium Nitrite's intended use (which can only be institutional at this purity level); indicate antidotes on the bottle and on the website; limit qualified purchasers; refuse to provide quick, no-questions-asked delivery of deadly chemicals; require age verification for all users; enforce their ban on the sale of unsafe products; comply with standards of safety and reasonableness in the distribution of industrial chemicals; establish a complete ban on selling Sodium Nitrite to minors; use clear language on the outside of packaging material to identify contents; apply the same standard of care as other platforms that have removed the product; apply the same standard of care to US customers as that required in the UK and the Netherlands; include suicide prevention brochures with the

packaging; limit the ability to purchase any laboratory or medical grade chemicals; integrate an effective business verification mechanism to ensure vulnerable individuals are not purchasing poisonous chemicals; require dangerous products be clearly marked on the outside of the packaging to potentially alert household members; implement and staff a community standards and safety department that must launch investigations into reports of dangerous and deadly products; escalate reports of death and suicide caused by Consolidated Chemical products for safety investigation; and flag situations where Sodium Nitrite is purchased under unusual circumstances – such as when a person creates a new account to purchase Sodium Nitrite, when a person purchases Sodium Nitrite with no prior history of purchasing chemical products before, and when a person purchases Sodium Nitrite obviously not during business hours and around holidays known for their increase in suicide rates.

113. Upon information and belief, Emmeline and Kaedan experienced excruciating pain in their final moments alive.

114. Emmeline and Kaedan had no reasonable expectation that consuming Sodium Nitrite would cause excruciating pain.

115. Upon information and belief, Emmeline and Kaedan falsely believed that ingesting Sodium Nitrite was painless.

116. Plaintiffs Kimberly Carpenter and Marnie Brown suffered deep anguish in the form of physical, psychological, and emotional trauma.

117. Plaintiff Kimberly Carpenter and her two remaining triplets, Matthew and Daniel, moved out of their home state of Florida because of the constant reminders of Emmeline's death. Kimberly lives in fear every day that one or both of her other two remaining children will kill

themselves. Grieving his triplet sister's death, Daniel has attempted suicide twice. In his grief, Matthew refuses to talk about Emmeline and leaves the room immediately when Emmeline is brought up. Daniel and Matthew live in fear since their triplet sister's death and are terrified to see or hear their mother's pain. Kimberly is haunted by the fact that Emmeline's death with affect Daniel and Matthew for the rest of their lives. Kimberly has been unable to hold a full-time job since Emmeline's death. Employers see Kimberly as distraught and dismiss her as incapable.

118.    Since Emmeline's passing, Plaintiff Kimberly Carpenter suffered two minor heart attacks. Kimberly now suffers from depression, anxiety, post-traumatic stress disorder, complicated grief, intrusive thoughts of sadness and grief, shame, social and emotional isolation, sleeplessness, insomnia, chronic fatigue, anhedonia, suicidal ideation, fear for the well-being and safety of her other children, and severe functional impairment. Kimberly now requires antidepressant medication for her depression and nightly sleep deprivation.

119.    Plaintiff Marnie Brown is in therapy and requires multiple medications, including antidepressant medication and blood pressure medication, to get through her day. Marnie now suffers from depression, anxiety, post-traumatic stress disorder, complicated grief, intrusive thoughts of sadness and grief, shame, social and emotional isolation, sleeplessness, insomnia, chronic fatigue, anhedonia, suicidal ideation, brain fog and memory loss, hair loss, fear for the well-being and safety of her child, and severe functional impairment. Since Kaedan's death, Marnie was admitted to the Emergency Room twice for acute coronary syndrome. Marnie was fired from her high school teaching job and told by the Principal that she is too unstable to teach and not the same person she was two years ago. Marnie lives in fear that Kaedan's father will

have a heart attack from stress and grief. Marnie is also deeply worried about her daughter Kendall, Kaedan's little sister. Kendall refuses to talk about Kaedan's death, even in therapy.

120. Defendants caused the wrongful deaths of Emmeline and Kaedan through negligence.

## CAUSES OF ACTION

### *Count I – Negligence*

121. Plaintiffs adopt and reallege all allegations contained in paragraphs 1-113 as set forth fully herein.

122. Consolidated Chemical is a seller of Sodium Nitrite.

123. Consolidated Chemical knew or should have known that the 99+% pure form of Sodium Nitrite it was selling to the public was unreasonably dangerous if ingested.

124. Consolidated Chemical knew or should have known that the 99+% pure form of Sodium Nitrite it was selling to the public was being promoted by third parties as a substance to be used in the act of suicide.

125. Consolidated Chemical knew or should have known that the 99+% pure form of Sodium Nitrite it was selling to the public was actually being used in the act of suicide.

126. Consolidated Chemical refused to adopt policies and procedures relating to the purchase of the 99+% pure form of Sodium Nitrite that could have reduced or limited the ability of individuals to purchase this dangerous and deadly chemical.

127. Consolidated Chemical owed a duty to the public and Plaintiff's decedent to act as a reasonably responsible seller of its products.

128. Consolidated Chemical breached this duty.

129. Consolidated Chemical breached this duty in several actions, including but not limited to:

  a. cease selling Sodium Nitrite in the 99+% pure form to entities other than businesses;

  b.  include adequate warnings concerning the known risks of Sodium Nitrite in the 99% pure form, including but not limited to displaying accurate warning labels on Consolidated Chemical's website and the bottle;

  c. accurately and adequately describing Sodium Nitrite's intended use (which can only be institutional at this purity level);

  d. indicate antidotes on the bottle and on the website;

  e. limit sales of Sodium Nitrite in the 99+% pure form to qualified purchasers;

  f. refuse to provide quick, no-questions-asked delivery of deadly chemicals;

  g. require age verification for all purchasers;

  h. enforce their ban on not selling unsafe products;

  i. comply with standards of safety and reasonableness in the distribution of industrial chemicals;

  j. establish a complete ban on selling Sodium Nitrite to minors;

k.  use  clear language on the outside of packaging material to identify contents;

l.  apply the same standard of care as other platforms that have removed the product;

m.  apply the same standard of care to US customers as that required in the UK and the Netherlands;

n.  include suicide prevention brochures with the packaging;

o.  limit the ability to purchase any laboratory or medical grade chemicals to documented businesses;

p.  integrate an effective business verification mechanism to ensure vulnerable individuals are not purchasing poisonous chemicals;

q.  require dangerous products be clearly marked on the outside of the packaging to potentially alert household members;

r.  implement and staff a community standards and safety department that must launch investigations into reports of dangerous and deadly products;

s.  escalate reports of death and suicide caused by Consolidated Chemical products for safety investigations; and

t.  flag situations where Sodium Nitrite is purchased under unusual circumstances – such as:

    i.  when a person creates a new account to purchase Sodium Nitrite;

ii. when a person purchases Sodium Nitrite with no prior history of purchasing chemical products before; and

iii. when a person purchases Sodium Nitrite obviously not during business hours and around holidays known for their increases in suicide.

130. Consolidated Chemical's negligent conduct directly and proximately caused Emmeline's and Kaedan's deaths and excruciating pain prior to their deaths, resulting in damages set forth herein.

131. In addition to Defendants' conduct and actions constituting negligence under the common law of the State of Pennsylvania, Defendants' conduct and actions were also negligent under standards set forth in certain applicable sections of the Restatement Second of Torts. In particular, Defendants' conduct and actions were negligent under the following standards established by the Restatement:

a. Section 302A – "An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the negligent or reckless conduct of the other or a third person."

i. Defendants realized or should have realized that selling the sodium nitrite product to individuals, who Defendants knew or should have known did not have a business purpose for such a purchase;

ii. Defendants realized or should have realized that the sodium nitrite product, in the form sold by Defendants involved an

unreasonable risk of harm to the individuals purchasing the product;

    iii. Defendants realized or should have realized that the sodium nitrite product could cause harm to the purchasers through negligent or reckless conduct; and

    iv. Defendants' conduct and actions constitute negligence under Section 302A and directly caused or contributed to the pain, suffering and wrongful deaths of Emmeline and Kaedan.

b. Section 302B – "An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal."

    i. Defendants realized or should have realized that selling the sodium nitrite product to individuals, who Defendants knew or should have known did not have a business purpose for such a purchase;

    ii. Defendants realized or should have realized that the sodium nitrite product, in the form sold by Defendants involved an unreasonable risk of harm to the individuals purchasing the product;

    iii. Defendants realized or should have realized that the sodium nitrite product could cause harm to the purchasers even if

their own conduct would be a violation of their respective state's laws relating to suicide; and

    iv.    Defendants' conduct and actions constitute negligence under Section 302B and directly caused or contributed to the pain, suffering and wrongful deaths of Emmeline and Kaedan.

c.  Section 390 – "One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them."

    i.    Defendants realized or should have realized that selling the sodium nitrite product to individuals, who Defendants knew or should have known did not have a business purpose for such a purchase;

    ii.    Defendants realized or should have realized that the sodium nitrite product, in the form sold by Defendants involved an unreasonable risk of harm to the individuals purchasing the product;

    iii.    Defendants realized or should have realized that the sodium nitrite product could cause harm to the purchasers, likely because their youth, inexperience or otherwise, could use it

in a manner involving unreasonable risk of physical harm to themselves; and

iv.     Defendants' conduct and actions constitute negligence under Section 390 and directly caused or contributed to the pain, suffering and wrongful deaths of Emmeline and Kaedan.

132.    As a direct and proximate result of Defendants' negligent conduct, Emmeline and Kaedan sustained intense physical pain and suffering during their last moments alive. Plaintiffs seek compensatory damages for this intense physical pain and suffering in amounts to be determined by the jury.  Plaintiffs also seek punitive damages for the wanton misconduct that directly and proximately caused the intense physical pain and suffering.

133.    Defendants should be punished for the direct and proximate wrongful death caused by its negligent conduct.

### *Count II – Negligent Infliction of Emotional Distress*

134.    Plaintiffs adopt and reallege all allegations contained in paragraphs 1-126 as set forth fully herein.

135.    Consolidated Chemical is a seller of Sodium Nitrite.

136.    Consolidated Chemical knew or should have known that the 99+% pure form of Sodium Nitrite it was selling to the public was unreasonably dangerous if ingested.

137.    Consolidated Chemical knew or should have known that the 99+% pure form of Sodium Nitrite it was selling to the public was being promoted by third parties as a substance to be used in the act of suicide.

138. Consolidated Chemical knew or should have known that the 99+% pure form of Sodium Nitrite it was selling to the public was actually being used in the act of suicide.

139. Consolidated Chemical refused to adopt policies and procedures relating to the purchase of the 99+% pure form of Sodium Nitrite that could have reduced or limited the ability of individuals to purchase this dangerous and deadly chemical.

140. Consolidated Chemical owed a duty to the public and Plaintiffs' decedents to act as a reasonably responsible seller of its products.

141. Consolidated Chemical breached this duty.

142. Consolidated Chemical breached this duty in several actions, including but not limited to:

   a. cease selling Sodium Nitrite in the 99+% pure form to entities other than businesses;

   b. include adequate warnings concerning the known risks of Sodium Nitrite in the 99% pure form, including but not limited to displaying accurate warning labels on Consolidated Chemical's website and the bottle;

   c. accurately and adequately describing Sodium Nitrite's intended use (which can only be institutional at this purity level);

   d. indicate antidotes on the bottle and on the website;

   e. limit sales of Sodium Nitrite in the 99+% pure form to qualified purchasers;

   f. refuse to provide quick, no-questions-asked delivery of deadly chemicals;

   g. require age verification for all purchasers;

   h. enforce their ban on not selling unsafe products;

i. comply with standards of safety and reasonableness in the distribution of industrial chemicals;

j. establish a complete ban on selling Sodium Nitrite to minors;

k. use clear language on the outside of packaging material to identify contents;

l. apply the same standard of care as other platforms that have removed the product;

m. apply the same standard of care to US customers as that required in the UK and the Netherlands;

n. include suicide prevention brochures with the packaging;

o. limit the ability to purchase any laboratory or medical grade chemicals to documented businesses;

p. integrate an effective business verification mechanism to ensure vulnerable individuals are not purchasing poisonous chemicals;

q. require dangerous products be clearly marked on the outside of the packaging to potentially alert household members;

r. implement and staff a community standards and safety department that must launch investigations into reports of dangerous and deadly products;

s. escalate reports of death and suicide caused by Consolidated Chemical products for safety investigations; and

t. flag situations where Sodium Nitrite is purchased under unusual circumstances – such as:

i. when a person creates a new account to purchase Sodium Nitrite;

ii.  when a person purchases Sodium Nitrite with no prior history of purchasing chemical products before; and

iii.  when a person purchases Sodium Nitrite obviously not during business hours and around holidays known for their increases in suicide.

143.  Consolidated Chemical's negligent conduct directly and proximately caused Plaintiff Kimberly to witness the excruciating death of her child.

144.  Consolidated Chemical's negligent conduct directly and proximately caused Plaintiff Marnie to suffer through the excruciating death of her son.

145.  As a direct and proximate result of Consolidated Chemical's actions, Plaintiffs have suffered and continue to suffer severe emotional distress.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs request the Court to enter judgment as follows:

A.  For a judgment of liability against Defendants;

B.  For an award of compensatory and punitive damages for intense pain and suffering experienced by Plaintiffs' decedents after ingestion of the Sodium Nitrite and before their death in amounts to be determined by the jury;

C.  For punitive damages against Defendants for the untimely and wrongful death of Plaintiffs' decedents;

D.  For compensatory and punitive damages for the economic damages incurred by Plaintiffs for medical and funeral expenses in amounts to be determined by the jury;

E.  For an award post-judgment interest;

F.  For costs; and

G. For such other relief as the Court deems just and proper.

**DATED**: April 1, 2026

*/s/Brian Zeiger*
Brian Zeiger (Atty ID: 87063)
zeiger@levinzeiger.com
**Levin & Zeiger LLP**
1500 JFK Blvd Ste 620
Philadelphia, PA 19102
T: 215-546-0340

*/s/Carrie Goldberg*
Carrie Goldberg (admitted *pro hac vice*)
carrie@cagoldberglaw.com
*/s/Naomi Leeds*
Naomi Leeds (admitted *pro hac vice*)
naomi@cagoldberglaw.com
**C.A. Goldberg, PLLC**
16 Court St., 33rd Floor
Brooklyn, NY 11241
T: 646-666-8908

*Attorneys for Plaintiffs*

**VERIFICATION**

I verify that the statements made in this Complaint are true and correct to the best of my knowledge, information, and belief. I understand that the statements herein are made subject to the penalties of 18 Pa C.S.§4904 relating to unsworn falsification to authorities.

Dated: April 1, 2026

*/s/Brian Zeiger*
Brian Zeiger (Atty ID: 87063)
zeiger@levinzeiger.com
**Levin & Zeiger LLP**
1500 JFK Blvd Ste 620
Philadelphia, PA 19102
T: 215-546-0340

*/s/ Carrie Goldberg*
Carrie Goldberg (admitted *pro hac vice*)
carrie@cagoldberglaw.com
*/s/ Naomi Leeds*
Naomi Leeds (admitted *pro hac vice*)
naomi@cagoldberglaw.com
**C.A. Goldberg, PLLC**
16 Court St., 33rd Floor
Brooklyn, NY 11241
T: 646-666-8908

*Attorneys for Plaintiffs*

# CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Dated: April 1, 2026

Submitted by:

*/s/Brian Zeiger*
Brian Zeiger (Atty ID: 87063)
zeiger@levinzeiger.com
**Levin & Zeiger LLP**
1500 JFK Blvd Ste 620
Philadelphia, PA 19102
T: 215-546-0340

*/s/ Carrie Goldberg*
Carrie Goldberg (admitted *pro hac vice*)
carrie@cagoldberglaw.com
*/s/ Naomi Leeds*
Naomi Leeds (admitted *pro hac vice*)
naomi@cagoldberglaw.com
**C.A. Goldberg, PLLC**
16 Court St., 33rd Floor
Brooklyn, NY 11241
T: 646-666-8908

*Attorneys for Plaintiffs*